DETROIT TRUST CO. *v.* STORMFELTZ-LOVELEY CO.

1. STATUTES—SUFFICIENCY OF TITLE—CONSTITUTIONAL LAW—TRUSTS—MORTGAGES.

Title of Act No. 111, Pub. Acts 1931, providing for administration of mortgage trusts under equity jurisdiction where consummation of objects and purposes thereof in manner and form as intended by mortgage indenture shall be found not capable of accomplishment, *held,* sufficient to give notice of purposes of act (Const. art. 5, § 21).

2. SAME—IMMEDIATE EFFECT—PUBLIC SAFETY.

Since Act No. 111, Pub. Acts 1931, affects public safety by protecting property, legislature had power to give it immediate effect (Const. art. 5, § 21).

3. SAME—IMPAIRMENT OF CONTRACTS—TRUSTS—MORTGAGES.

In so far as Act No. 111, Pub. Acts 1931, takes away substantial rights of parties to mortgage trust or those having beneficial interest therein, it is unconstitutional as impairment of obligation of contract (Federal Const., art. 1, § 10; State Const., art. 2, § 9).

4. MORTGAGES—FORECLOSURE—RIGHTS OF BONDHOLDERS—NOTICE—STATUTES.

Bondholders were entitled to notice of hearing at which court authorized trustee under trust mortgage to bid in property for bondholders at certain price (Act No. 111, Pub. Acts 1931), where no substantial bid had been received at foreclosure sale.

5. STATUTES—MORTGAGES—EQUITY—CONSTITUTIONAL LAW.

Act No. 111, Pub. Acts 1931, providing for invoking aid of equity court authorizing trustee to bid in property for bondholders, where no substantial bid has been received at foreclosure sale, violates no substantial right of mortgagor, since it insures substantial bid for property, thus decreasing deficiency.

6. SAME—RIGHTS OF BONDHOLDERS—IMPAIRMENT OF CONTRACT.

Act No. 111, Pub. Acts 1931, providing that equity court may, in case substantial bid has not been received at foreclosure sale under trust mortgage, at request of majority of bondholders,

authorize trustee to bid in property for bondholders, seriously impairs obligations of contract of nonassenting bondholders, since there is deviation from express trust created by trust mortgage (Federal Const., art. 1, § 10; State Const. art. 2, § 9).

7. Mortgages—Trusts—Rights of Bondholders—Statutes—Constitutional Law—Impairment of Contract.

Bondholders are entitled to receive what their contract provided for, and may not be compelled to take in lieu thereof beneficial interest in trust uncertain as to time and outcome not contemplated by indenture, provided for by Act No. 111, Pub. Acts 1931, enacted after execution of trust mortgage.

Appeal from Wayne; Moll (Lester S.), J. Submitted January 28, 1932. (Docket No. 219, Calendar No. 36,339.) Decided April 4, 1932.

Bill by Detroit Trust Company, a Michigan corporation, as trustee, against Stormfeltz-Loveley Company, a Michigan corporation, to foreclose a trust mortgage. On petition of committee under bondholders' protective agreement, sale was had pursuant to Act No. 111, Pub. Acts 1931. Defendant and James J. Spillane, nonassenting bondholder, appeal from order confirming sale. Reversed.

*Miller, Canfield, Paddock & Stone,* for plaintiff.

*George E. Brand,* for appellants.

*Thomas G. Long, amicus curiæ.*

Butzel, J. On November 1, 1926, Stormfeltz-Loveley Company, defendant herein, executed to plaintiff, Detroit Trust Company, as trustee, a trust mortgage on the land and eight-story building at the northeast corner of Woodward avenue and East Grand boulevard, Detroit, to secure a serial bond

issue of $1,000,000, payable over a term of years. It contained the usual clauses providing for foreclosure and sale and also an assignment of income in accordance with Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, § 13498 *et seq.*). Upon default in a serial payment of $100,000 and of a balance of $20,000 for interest, both due November 1, 1930, plaintiff accelerated the entire balance due, asserted its rights to the income and property, and filed a bill of foreclosure. On April 16, 1931, a decree was entered, finding $813,173.30 plus fees due, and ordering a sale by the circuit court commissioner.

On December 1, 1930, a bondholders' protective committee was organized, and all but $21,500 of the $800,000 of outstanding bonds were deposited with the committee under a bondholders' protective agreement. Its provisions gave the committee broad powers. They might purchase the mortgaged property and apply the bonds towards payment. They could form a corporation to hold, own, and operate the property, if purchased. The agreement amounted substantially to an irrevocable power of attorney to exercise the rights of ownership, but all for the benefit of the bondholders. The sale of the mortgaged property was advertised by the circuit court commissioner, who offered it for sale on September 29, 1931. The following day he filed a "preliminary report of sale," showing that he had offered the property for sale but that no bids were received and none appeared to be obtainable for a sum representing the present fair and reasonable value of the interest of the holders of the bonds. On December 10, 1931, a petition signed by all the members of the bondholders' committee was filed in the foreclosure suit. A copy of the bondholders' protective agreement was attached. The petitioners

stated that they represented $778,500 of the $800,000 bonds outstanding, and had all rights and powers in respect to them; that no bids were obtainable at the attempted sale for a sum representing the fair and reasonable value of the interest of the bondholders, which amount was placed at $760,000. It prayed that the trustee be authorized to bid in the property under Act No. 111, Pub. Acts 1931, for such amount.

A brief reference to this act is necessary. It is entitled:

"An act to provide for the administration of mortgage trusts under the jurisdiction of equity where the consummation of the objects and purposes thereof in manner and form as intended by the mortgage indenture shall be found not capable of accomplishment."

It provides that upon the hearing of a report of sale under a decree in proceedings to foreclose a trust mortgage given to secure bonds or other obligations, duly issued and authenticated, if it appears that no bid has been made or appears to be obtainable for a sum representing the then fair and reasonable value of the mortgaged premises, the court may, at the written request of holders of not less than a majority of the bonds, who shall in both number and amount be fairly representative of the rights and interests of all bondholders, authorize the bidding in of the property for the fair and reasonable value of the interest of the bondholders, and order the sale of the property to the trustee for the benefit of all holders of bonds or other obligations secured by the mortgage. In determining the majority of the outstanding bonds, those held by the mortgagor or for its benefit are not included. The bidding by the bondholders shall constitute their

appearance and intervention in the case, and any other bondholders may appear. The property when bid in is to be managed and administered by the trustee under and in accordance with the rules and principles of law and equity pertaining to express trusts, but shall be subject to the jurisdiction of the court. The trustee shall have the power to repair, maintain, and operate or lease the property until the sale thereof. It may borrow money and mortgage the property for the payment of the portion of the bid required to be paid in cash or for any other purposes of the trust, all for the benefit of the holders of the bonds, obligations, etc. It is the duty of the trustee to negotiate and effect a sale or other disposal of the property as soon as it can be done without sacrifice of the fair and reasonable value of the property. The sale may be for cash, or, in whole or in part, for bonds, notes, debentures, stocks, or other securities. No contract, the full performance of which shall extend beyond two years, may be made except by and with the approval and authorization of the court, upon due notice to, and consent of, the majority in interest of the beneficiaries of the trust. We shall not refer to many other important provisions of the act. The act was given immediate effect and approved May 18, 1931.

On hearing of the petition, it was shown that the average earnings from the property, without figuring depreciation, were in the neighborhood of 5 per cent. above taxes and fixed charges, notwithstanding the fact that a large part of the building was vacant. Even at the time of the foreclosure, the earnings had fairly well kept up. Plaintiff and defendant offered conflicting testimony as to the adequacy of the bid of $760,000 under the prevailing conditions. The court ordered the sale at the price bid. James

J. Spillane, a holder of a $1,000 bond, appeared specially at the hearing for the purpose of objecting to the granting of the petition, and he, together with defendant, have appealed from the order of the court.

Counsel claim that, as one of the results of the financial depression, it is extremely difficult to obtain loans on real estate security; that in many instances the income from mortgaged property is insufficient to pay taxes, operating charges, interest, and serial retirements, and the trustee should bring foreclosure proceedings to avoid further loss; that a bondholders' committee representing but a portion of the bonds may be seriously handicapped and possibly not be able to bid at all on account of its inability to pay the amount of cash required to purchase the property at foreclosure sale even after the application of the deposited bonds; that if a cash bid is made at all, it must be a very small one; that bondholders, realizing conditions, are apt to sell their bonds for far less than their actual value. The seriousness of the situation is recognized by the title to Act No. 111, Pub. Acts 1931, and also by the further fact that the act was given immediate effect by the legislature. Plaintiff contends that the provisions of the act were not invoked until after the property had been offered at a judicial sale at which the bondholder, the mortgagor, and the public had an opportunity to bid; that the mortgage indenture created an express trust, the purposes of which were found incapable of being carried out in manner and form as intended by the mortgage; and thereafter the aid of a court of equity was sought to administer substantial relief to all bondholders without any discrimination. The defendant and objecting bondholder claim that the commissioner's sale may have

failed because plaintiff desired to invoke the aid of
Act No. 111, *supra,* and that the committee holding
over 97 per cent. of the bonds could have purchased
the property with a comparatively small cash outlay.
But a few years previous it had been appraised at
more than twice the amount of the mortgage loan,
and it was paying a very substantial income over
and above taxes and fixed charges even during the
period of foreclosure.

It is further claimed that the title of the act is
insufficient and does not fully describe its purposes.
We believe that the title does give sufficient notice of
the purposes of the act. It is further contended that
the act should not have been given immediate effect.
In *Industrial Bank of Wyandotte* v. *Reichert,* 251
Mich. 396, we upheld the powers of the legislature to
give immediate effect to a law affecting the public
safety by protection of property. See, also, *Naud-
zius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30
N. C. C. A. 179).

The main attack on the law is made on the ground
that it offends both the Federal and State Constitu-
tions in that it provides for the taking of property
without due process of law, contrary to the provi-
sions of the 14th Amendment of the Constitution of
the United States and article 2, § 16, of the State
Constitution; and also in that it impairs the obliga-
tion of a contract contrary to the provisions of arti-
cle 1, § 10, of the Constitution of the United States,
and article 2, § 9, of the State Constitution. We
shall only discuss the effect of the act as to mort-
gages executed prior to its enactment.

Plaintiff claims that the act affects the remedy
alone. In so doing, however, it may not take away
substantial rights of parties to the instrument or
those having a beneficial interest therein. *Mundy* v.

*Munroe,* 1 Mich. 68; *Cargill* v. *Power,* 1 Mich. 369; *Blackwood* v. *Van Vleet,* 11 Mich. 252. See, also, *Rott* v. *Steffens,* 229 Mich. 241, 246 (38 A. L. R. 224). The authority given by the court to the trustee to bid $760,000 for the property was granted at a hearing of which no notice was given to bondholders who had not deposited their bonds with the committee. Plaintiff claims that these holders were parties to the foreclosure brought by the trustees in their behalf, and thus had at least constructive notice of the proceedings in the suit. The indenture provided that the foreclosure was to be brought by the trustee, not by the bondholders. While no notice is necessary with respect to proceedings incident to the usual foreclosure sale, notice was necessary under the special type of proceeding provided by the act. It provides that the bid on the request of a majority of bondholders would constitute their appearance in the case, and that nonassenting bondholders might also appear. How were the latter to appear without any notice? The *amicus curiæ,* who has filed a brief in support of the act, asserts that if notice was necessary it should have been given, and that a provision to that effect can be read into the act. The fact remains, however, that no notice was given, and it was essential that the nonassenting bondholders should have had notice either by personal service, or, if this could not be obtained, then by publication.

Appellants further claim that the due process clause was violated because the property was not sold in the manner provided by the indenture and in accordance with the law affecting foreclosure at the time that the indenture was executed. They also contend that the procedure used is against public policy in that it stifles bidding. We cannot see how

any substantial rights of the mortgagor are violated by the act. It only provides for invoking the aid of a court of equity after the property has been offered at public sale, duly advertised, and no substantial bid has been received. If a substantial bid is made, the act does not apply. It is true that prospective bidders are more apt to refrain from bidding for cash when they know that the bondholders or the vast majority of them, acting through a committee, will outbid them, because they are able to apply bonds on the purchase price. Bidders other than bondholders have always suffered from this as well as other disadvantages. The act rather operates to the advantage of the mortgagor. It insures a substantial bid for the property, and thus decreases the deficiency. The mortgagor has notice of all proceedings, and is not deprived of any substantial rights.

The act does seriously impair the obligations of the contract of the nonassenting bondholders. There is a deviation from the express trust created by the indenture under which nonassenting bondholders are *cestuis que trustent*. In *Young* v. *Young,* 255 Mich. 173 (77 A. L. R. 963), we upheld the deviation from an express trust where there had arisen an exigency not contemplated by the settlor. An exigency may arise where the security may be much impaired or entirely lost through unusual conditions. Such was the case in *City of Detroit* v. *Railway,* 226 Mich. 354, relied upon by plaintiff. In that case, because of the emergency that arose on account of the threatened ousting of the Detroit United Railway from the streets of Detroit and the consequential depreciation, approaching extinction, of a large part of the mortgage security located in Detroit, the court did permit, without consent or notice to all of the bondholders, the allocation of assets located in the

city of Detroit, so that in return for the large sum to be paid from their sale to the city, a proper release of mortgage could be given to the city. No such exigency or emergency is presented in the instant case. The difficulties are not new, though more serious at the present time than ever before. A bondholder has a right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with the right to look to the responsibility of the mortgagor for a proportionate share in the deficiency. He is not bound to become an owner in common of a beneficial interest in a trust which may run on for many years and from which he may realize cash, stocks, bonds, or other securities that eventually may net him more or less than the amount he would have received had the property been sold for cash.

We have examined with care many cases cited to us. In *Northern Pacific R. Co.* v. *Boyd,* 228 U. S. 482 (33 Sup. Ct. 554), it was held that in a reorganization in which the shareholders participate and retain an interest and no provisions are made for nonassenting creditors not parties to the foreclosure, nor made such by notice to prove their claims, the latter may pursue their remedy against the property of the corporation even after a judicial sale. (See *Louisville Trust Co.* v. *Railway Co.,* 174 U. S. 674 [19 Sup. Ct. 827].) The court stated by way of *dictum* that if a creditor should refuse a fair offer, on equitable terms, of income bonds and preferred stock, he could not later attack the sale. This *dictum* is the basis of the decision in *Phipps* v. *Railway Co.* (C. C. A.), 284 Fed. 945 (28 A. L. R. 1184), upon which plaintiff strongly relies. A result contrary to that of the *Phipps Case, supra,* is reached in *Coriell* v. *White,* 54 Fed. (2d) 255, in which the

court, in holding that a creditor is absolutely entitled to cash equal to an aliquot share of what the proceeds at public sale would bring, said:

"It must be left to the decision of the creditor whether he will accept a new form of security in payment of his debt, and thus embark upon a new venture, or insist upon the rights which are his because of the contract which he entered into and by which he extended credit."

Michigan has adopted the deciding point of the *Boyd Case* in *Wabash R. Co.* v. *Marshall*, 224 Mich. 593. See, also, *P. R. Walsh Tie & Timber Co.* v. *Railway Co.* (C. C. A.), 280 Fed. 38; *In re Prudential Outfitting Co.*, 250 Fed. 504; *Ex parte Moore*, 6 Fed. (2d) 905. We believe that the correct and reasonable rule in mortgage foreclosures is stated in *Werner, Harris & Buck* v. *Equitable Trust Co.* (C. C. A.), 35 Fed. (2d) 513; in the absence of any provision therein in the trust agreement—

"authorizing the trustee to bid for and on behalf of the bondholders, there was no power in the courts to confer such authority upon the trustee. * * * Each bondholder has the absolute right to determine for himself, in case of default, whether he shall take his loss and quit, or continue to gamble; if the property is sold at public sale, he has a right to take his proportion of the best bid that can be secured in cash, and cannot be compelled to become an owner of an undivided interest in the property."

To like effect are *James* v. *Cowing*, 82 N. Y. 449; *Hollister* v. *Stewart*, 111 N. Y. 644 (19 N. E. 782); *Beckman* v. *Emery-Thompson Mach. & Supply Co.*, 9 Ohio App. 275.

We are not in accord with the decision in *Nay Aug Lumber Co.* v. *Scranton Trust Co.*, 240 Pa. 500

(87 Atl. 843), which fully supports plaintiff's contentions. In *Werner, Harris & Buck* v. *Equitable Trust Co., supra,* the reasoning of *Nay Aug Lumber Co.* v. *Scranton Trust Co., supra,* is held untenable. We have examined with great care *Colorado & Southern R. Co.* v. *Blair,* 214 N. Y. 497 (108 N. E. 840); *Sage* v. *Railroad Co.,* 99 U. S. 334; *Gilfillan* v. *Union Canal Co.,* 109 U. S. 401 (3 Sup. Ct. 304); and *Canada Southern R. Co.* v. *Gebhard,* 109 U. S. 527 (3 Sup. Ct. 363), as well as other cases cited by counsel, and they are not at all controlling in the controversy at bar. The bondholders are entitled to receive what their contract provided for, and cannot be compelled to take in lieu thereof a beneficial interest in a trust uncertain as to time and outcome, and not contemplated by the indenture.

The foreclosure sale is set aside, with costs to defendants, but without prejudice to the right of a resale under the foreclosure decree.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.