UNION GUARDIAN TRUST CO. *v.* BUILDING SECURITIES
CORP.

ON REHEARING.*

TRUSTS—MORTGAGES—PURCHASE BY TRUSTEE AT FORECLOSURE SALE
WITHOUT BONDS, COUPONS OR CASH—STATUTES—EQUALLY DIVIDED
COURT.

>   In equity proceedings to foreclose trust mortgage, where con-
>   trolling statute does not authorize trustee to purchase mort-
>   gaged premises at foreclosure sale without having in its
>   possession, or presenting to circuit court commissioner con-
>   ducting said sale, any bonds, or coupons, and trust deed
>   contains specific provisions, permitting trustee to purchase at
>   such sale and permitting any purchaser to use bonds, matured
>   but unpaid coupons, and cash, decree of foreclosure authoriz-
>   ing trustee to make purchase at sale without presenting either
>   bonds, coupons or cash is affirmed by an equally divided court
>   (3 Comp. Laws 1929, §§ 13281, 13282, 13309, 14364–14380,
>   Act No. 111, Pub. Acts 1931; Act No. 210, Pub. Acts 1933).

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted October 21, 1936. (Docket No. 93, Calen-
dar No. 38,892.) Decided May 21, 1937. Submitted
on rehearing November 10, 1937. Decided Decem-
ber 14, 1937.

Bill by Union Guardian Trust Company, a Michi-
gan corporation, as trustee under a deed of trust,
against Building Securities Corporation and 8162
Jefferson East Corporation, Michigan corporations,
to foreclose a trust mortgage. Decree for plaintiff.
Defendants appeal. Affirmed on rehearing by equally
divided court.

---

* The opinions filed after original hearing appear *ante*, 144.

*Milburn & Semmes (Edward T. Goodrich,* of counsel), for plaintiff.

*Munro, Powell, Smilay & Covey (Slyfield, Hartman, Mercer & Reitz,* of counsel), for defendants.

*George E. Brand, Butzel, Eaman, Long, Gust & Bills, Miller, Canfield, Paddock & Stone, Shaeffer & Dahling* and *Pear, Campbell, Langs & Tyler, amici curiæ.*

### On Rehearing.[*]

Wiest, J.   The decree is in accord with the provisions of the indenture and is affirmed.

Giving the provisions of the indenture reasonable construction discloses express power in the trustee to bid and purchase, at the foreclosure sale, in behalf of all the bondholders, whose interest he is bound to protect, without personal possession of the bonds.  Such purchase by the trustee does not divest the trust but only vests the legal title in the trustee for the benefit of the bondholders, who thereby become the equitable owners of the *res.*   The inchoate right to the benefit of the security becomes thereby an equitable right of participation in the *res.*   Such enforcement of the provisions of the indenture by decree cannot be successfully contested by the mortgagor and, as no bondholder objects, solicitude relative to protection of the mortgagor is gratuitous.  The provisions of the indenture amply protect the rights of all parties in case of purchase by the trustee without possession of the bonds.

The following from *Richter* v. *Jerome,* 123 U. S. 233, 246 (8 Sup. Ct. 106), is applicable:

"All the rights the bondholders have or ever had in the mortgage, legal or equitable, they got through

[*] See *ante,* 144.—Reporter.

the trust company, to which the conveyance was made for their security. As bondholders claiming under the mortgage, they can have no interest in the security except that which the trustee holds and represents. If the trustee acts in good faith, whatever binds it in any legal proceedings it begins and carries on to enforce the trust, to which they are not actually parties, binds them. *Kerrison* v. *Stewart,* 93 U. S. 155, 160; *Corcoran* v. *Chesapeake & Ohio Canal Co.,* 94 U. S. 741, 745; *Shaw* v. *Railroad Co.,* 100 U. S. 605, 611. Whatever forecloses the trustee, in the absence of fraud or bad faith, forecloses them. This is the undoubted rule.''

Fead, C. J. Further light, developed on the rehearing, has convinced me that our former opinion (*ante,* 144) is wrong. I concur with Mr. Justice Wiest in affirmance of the decree.

The principal issue is whether that part of the decree is in error which permits plaintiff, as trustee, to purchase the premises upon foreclosure sale without producing bonds or paying cash to cover the bid.

The authorities are in conflict upon whether, without provision in the trust instrument therefor, the court, on foreclosure, may authorize the trustee to bid at the sale, hold the property in trust, and dispose of it, for all the bondholders. See *First National Bank in Wichita* v. *Neil,* 137 Kan. 436 (20 Pac. 528), and annotations, in 88 A. L. R. 1252.

That point was considered in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* 257 Mich. 655 (88 A. L. R. 1263), but the case has no application here because the facts are different.

But no case has been cited or found which denies the validity or effect of such an express provision in the mortgage. Nor has reason been advanced why parties *in sui juris* may not so contract.

In the mortgage at bar, the trustee is expressly given authority to bid for and purchase the premises at foreclosure sale. But for whom?

The mortgage does not declare *in haec verba* that the trustee may buy only for all the bondholders. But the instrument is incapable of any different construction. It precisely prescribes the rights and duties of the parties which arise, and what shall happen to the premises, when the trustee buys. Article IX, § 5, provides that if the trustee buys:

1. All bondholders shall pay the trustee their proportion of the costs and expenses of the foreclosure, including attorney and trustee fees, and certain other expenses and advances of the trustee; and the trustee has a lien therefor on the bondholders' interests in the premises and proceeds of subsequent sale. Parenthetically, this provision persuasively negatives the idea that the trustee must pay the bid, or any part of it, in cash in order that a payment may be made to the bondholders. It clearly contemplates that, instead of receiving money from the trustee when it bids and buys, the bondholders shall pay money to the trustee, not only for its general advances and compensation but for money spent by it in acquiring the title for their benefit.

2. The trustee may manage the property, sell it and distribute the proceeds ratably among those entitled thereto.

Other provisions of the instrument require *pro rata* distribution of all collections on the debt and proceeds of sale of the premises and emphasize the continuous representation of all bondholders by the trustee. It contains no language providing for or contemplating a purchase on foreclosure by the trustee personally, or for any person, or private group. The words declaring the effect of purchase

by the trustee and setting up the future disposition of the premises are so clear that any bondholder, reading the instrument, would be advised that, no matter in what capacity the trustee assumes to buy or with what, it may buy only for all the bondholders.

This conclusion is reached upon the terms of the mortgage itself, without special consideration of fiduciary relationship and duties of trustee to bondholders and without dragging the second sentence of article X, § 2, from its ambush.

It is true that the trust instrument contains no provision expressly stating that the trustee may buy without cash or bonds. It is wholly silent upon whether the trustee must, or need not, pay in cash or bonds. Few, if any, contracts set up in words all the details that may be involved in their execution. When the occasion arises, the silences in them are made articulate by operation of law upon, or necessary or reasonable intendment from, the relationship, powers, rights and obligations expressly provided in the contract. If details of procedure are necessary on foreclosure to protect parties, the court may provide them in the decree.

What rule of law is applicable here? When bidding for all the bondholders, on authority from them, the trustee represents the entire mortgagee interest. Its position, therefore, is not different from that of a private mortgagee on foreclosure of his mortgage. This court holds that a mortgagee may purchase on foreclosure without payment of his bid, to the amount of his mortgage, because the ritualism of payment by the mortgagee to the selling officer and the return of the money by the selling officer to the mortgagee would make the payment no more than an "idle gesture." *Griffin* v. *Union*

*Guardian Trust Co.,* 261 Mich. 67; *Feldman* v. *Equitable Trust Co.,* 278 Mich. 619.

It would be equally an "idle gesture" for a trustee, buying for all bondholders, to pay the bid price in cash to the circuit court commissioner because the commissioner would turn it back to the trustee to be applied as the mortgage requires. And if the trustee or others had advanced personal money to buy for all bondholders, the trustee would repay the advance and every one would be back at the point from which he started.

Also, in instances where bondholders are numerous or recalcitrant, so united action and proportional advance from all could not be had, the power of the trustee to bid for all the bondholders would be wholly or substantially nullified by a requirement that its bid be paid in cash or bonds because of the lack of incentive in anyone to advance money or bonds for the benefit of all bondholders instead of using the funds for personal benefit.

In my opinion, the instrument expressly provides that the trustee may purchase on foreclosure, but only for all the bondholders, and, by operation of rules of law and intendment from the power given, it need not pay the bid in cash or bonds.

The authorities, although few upon the precise question, support this position. None has been cited to the contrary.

*Kitchen Bros. Hotel Co.* v. *Omaha Safe Deposit Co.,* 126 Neb. 744 (254 N. W. 507), is in direct point upon the essential facts that the trust instrument expressly provided that the trustee might bid, the use of bonds was permitted as at bar, no express provision requiring, or dispensing with, cash or bonds was set up, and the trustee was authorized to manage and dispose of the premises after the pur-

chase. The court sustained a provision in the decree of foreclosure that the trustee could give the selling officer a receipt as the equivalent of money.

In *Straus* v. *Chicago Title & Trust Co.,* 273 Ill. App. 63, the court found in the trust instrument authority in the trustee to purchase without production of bonds (the equivalent of article X, § 2 above referred to in the instrument at bar) and held, not only that the trustee could purchase without bonds or cash, but, in the discretion of the court on petition of a bondholder, the trustee could be compelled to buy. It was the ruling on compulsion that was criticized in 29 Illinois Law Review, p. 218, as permitting the court to change the contract of the parties.

The *Straus* trust deed does not appear to have contained any provision as to disposition of the property after the purchase by the trustee and it was evidently in support of its construction of the trust deed that the court discussed, with approval, the cases holding the doctrine of inherent power in the trustee to buy and dispose of for all the bondholders, the theory rejected by this court in the *Stormfeltz-Loveley Case.* In *Chicago Title & Trust Co.* v. *Robin,* 361 Ill. 261 (198 N. E. 4), the court rejected the inherent power doctrine and distinguished the *Straus Case* on the ground it concerned express contract power, approving the ruling that the bid need not be paid in cash and bonds in these words:

"A trustee may be authorized by a trust deed to take the trust property on foreclosure sale for the benefit of all the bondholders and have the necessary or incidental power to bid it in at such sale."

*Cosmopolitan Hotel, Inc.,* v. *Colorado National Bank,* 96 Col. 62 (40 Pac. [2d] 245, 96 A. L. R. 1446), denied the trustee the right to bid without payment of cash, on protest of minority bondholders, because

the court held the trust instrument in terms specifically required cash payment. The majority opinion stressed this point by distinguishing other cases on the ground that "nothing appears to indicate that the sale was required to be for cash." In the light of a strong dissenting opinion and the insistence of the majority on the terms of the instrument, it is fairly inferable that the court would have held cash payment by the trustee unnecessary had not the instrument expressly required it.

*Smith* v. *Massachusetts Mutual Life Ins. Co.,* 116 Fla. 390 (156 South. 498, 95 A. L. R. 508), is not to the contrary. The trust instrument authorized the trustee to purchase and contained a provision which the court held permitted the trustee to discharge the purchase money by a receipt. The court held that these provisions authorized the trustee to purchase for the bondholders, and to take title and to execute a mortgage, but whether execution of the mortgage was under an express or implied trust the court would not say because it was unnecessary to decision. The point was upon the power to buy for the bondholders, not upon whether cash had to be paid. The opinion contains no expression as to the necessity to pay bonds or cash when the trustee is authorized to, and does, bid for all the bondholders and when the trust instrument defines the subsequent duties and powers of the trustee over the premises. It must be remembered that, in the case at bar, the trust instrument not only expressly authorizes the trustee to purchase but expressly provides for the care and disposition of the property by it.

It is suggested that a contrary conclusion is demanded because of the provision in the instrument that, if a purchaser uses bonds on his bid, he must present them for credit thereon of the amount ap-

portionable to them. The argument is that when the trustee bids, but not with cash, it necessarily follows that it bids with bonds, and it must present them for credit.

We need not discuss the conflict upon whether express provision is necessary to entitle the use of bonds on a bid. The provision therefor is common to trust instruments, and whether necessary or merely precautionary, it is no more than (1) permission or (2) declaration of right, so to use the bonds. In either case, it cannot be construed as a command to use bonds nor a limitation on other rights. As a matter of fact, it is wholly for the benefit of the bondholders, to make it easier for them to finance a bid by using credit for cash. At most, it is an option, and if not exercised, the instrument stands as though the whole provision were stricken from it.

When the trustee buys for all bondholders, it has a decree in its favor, into which the liability on the bonds has been merged, at least for the purposes of the foreclosure (*Shields* v. *Riopelle,* 63 Mich. 458), and upon which automatic credit is given for the purchase price unless the court provides a procedure. The trustee uses the money decree, not bonds, to bid and buy.

But, it is urged, the power would be prejudicial to the mortgagor because he is entitled to have the bonds presented at foreclosure and proper credit indorsed thereon as protection in case of action at law on the bonds by individual holders. Bonds are not produced and credit indorsed when the sale is made for cash. The decree establishes the liability of the mortgagor and the sale price establishes his credit thereon for all purposes, regardless of what is used to buy. Also, it is the law of this State that, after

foreclosure bill is filed, while suit is pending and after decree, no action at law on the debt may be maintained without leave of court. 3 Comp. Laws 1929, § 14367. In any event, and whether action at law be on the bonds or the decree, the mortgagor would have proper credit.

It has also been suggested that many evils may result from a ruling permitting the trustee to buy on foreclosure without producing bonds or cash. The complaint that competition would be stifled is fully answered in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co., supra.* Other suggested evils may or may not occur. It may be that the authority would save bondholders from loss through sacrifice sale and by preservation of the property for a favorable market. This is the evident purpose of the power. Possibility of loss is inherent in all business transactions and all parties to a contract voluntarily assume the risks in it. The responsibility for the contract rests upon the parties. The court must give it effect as it is made. It cannot rewrite it because of a fear or conviction that it will not work well. And, of course, when the contract sets up trust relationships, courts of chancery still have jurisdiction. And actionable wrongs may be redressed in law or equity. See *Sage* v. *Railroad Co.,* 99 U. S. 334.

While of no particular effect upon the construction of the trust instrument, it may be noted that no bondholder is here complaining of the decree permitting the trustee to bid and buy without bonds or money.

Defendants' contention that the ruling would carry the case into a new trust arising from purchase by the trustee and, thus, beyond the statutory jurisdiction of the court on foreclosure, is without merit. When the foreclosure is completed, the case

is closed. Any rights and remedies outside the scope of foreclosure and existing or arising thereafter may seek another forum.

Upon reconsideration, I think the following statement in the former prevailing opinion was too broad:

"We hold the question of when the sale is to be made under a foreclosure in equity is within the sound discretion of the trial judge."

In ordinary foreclosures, it is for the mortgagee, not for the mortgagor or court, to determine the time of sale. *Redfield* v. *Reid,* 148 Mich. 545; 103 A. L. R. 1441, note. The note in A. L. R. indicates authority to the effect that in foreclosure of trust mortgages, the court, in its discretion and on petition of bondholders, may order the time of sale in certain cases. The refusal of the court in the instant case to order sale at or within a definite time was right, whether from the exercise of discretion or from lack of jurisdiction to do otherwise. Decision on the point may rest on such alternative reasons. The power of the court to fix the time of sale may be left to future consideration in a proper case.

SHARPE, and CHANDLER, JJ., concurred with FEAD, C. J.

BUSHNELL, J. The question of whether upon this rehearing we should adhere to the result reached by the prevailing opinion at the original hearing (*ante,* 144, 147–159) seems to be controlled by very simple and fundamental propositions of law. A trust mortgage, like an ordinary mortgage, is contractual in its nature. The terms of such a contract are binding upon the respective parties, including bondholders under trust mortgages. Likewise, in event of

foreclosure, the terms of the mortgage are binding upon the court. The above is on the assumption, not here controverted, that the terms of the mortgage under consideration are neither in violation of law nor contrary to public policy.

It is well to bear in mind that we are not here concerned with the foreclosure of a trust mortgage which contains no provision as to the right or power of the trustee to bid at the foreclosure sale. What a court in such a case might lawfully provide in its decree as to the right of the trustee to bid and the manner in which the trustee's bid might be satisfied is wholly beside the point in the instant case. This is true because the trust mortgage now before the court contains an express provision as to the right of the trustee to bid, and the exact manner in which he may satisfy his bid, at least in so far as he attempts to use matured bonds or coupons.

The provision of the decree entered in the circuit court, of which appellant complains, reads:

"If said trustee, or any successor in trust, shall be the purchaser at said sale, *it shall not be required to have in its possession or to present to the circuit court commissioner conducting said sale any bonds and coupons,* nor shall it be required to pay any sum in cash except the costs and expenses of said sale."

The plain and simple question before us is this: Does the above quoted portion of the decree violate the contractual provisions found in the trust mortgage? Clearly it does because the trust mortgage in the article which provides for foreclosure and sale contains the following:

"At any such sale any bondholders or coupon holders or any committee or trustee appointed by them or a part of them, or the trustee or any successor in trust herein named may bid for and purchase

said mortgaged premises or any part thereof. The purchaser at any such sale shall be entitled in making settlement or payment for the property purchased, to use and apply any bonds and any matured and unpaid coupons hereby secured, *by presenting such bonds and/or coupons in order that.there may be credited thereon the sum apportionable and applicable to the payment thereof out of the net proceeds of such sale; and thereupon such purchaser shall be credited on account of such purchase price payable by him, with the sum apportionable and applicable out of such net proceeds to the payment of the bonds and coupons so presented.*"

In the above the plain express provision is that one bidding at the foreclosure sale who wishes to use coupons or bonds as a means of payment of his bid may do so "by presenting such bonds and/or coupons in order that there may be credited thereon the sum apportionable," etc. The provision could not have been made plainer by stating the converse, *i. e.,* that a bidder who does not present the bonds or coupons may not use them in satisfying his bid. That the quoted portion of the decree entered in the circuit court is in direct conflict with this provision in the trust mortgage is too plain for argument. This conclusion is not in any way affected by the following provision of the trust mortgage found in a subsequent article having to do with the liabilities, duties, powers and rights of the trustee. This provision reads:

"But all powers and rights of action hereunder may be exercised and enforced at all times by the trustee, at its election, without the possession or production of any of said bonds or coupons, or proof of ownership thereof at any time whatsoever."

Clearly this latter provision should be construed as relating only to the exercise of the general powers

of the trustee; and not be distorted into a nullification of the previously quoted express provision as to his right to bid and the limited circumstances under which or the manner in which he is given power to use bonds or coupons to satisfy his bid in whole or in part.

A court should not summarily delete from this trust mortgage the italicized portions first above quoted. We cannot agree that the italicized words mean nothing or that they afford no protection to the mortgagor or the nonappealing bondholders. As to the mortgagor, it was clearly his right to have this provision made a part of his contract. It afforded him the means of knowing which of the bondholders by submitting their bonds at the time of the sale joined with other like bondholders in purchasing the mortgaged premises; and then and there to have indorsed upon the bonds of such holders a proper credit. The question is not narrowed down to the right or power of a bondholder whose bond was not so indorsed to recover from the mortgagor in a suit on the bond. Instead the right is that of the mortgagor, who by the sale of his mortgaged premises has partly paid the bond, to have the indorsement made thereon. He contracted for this in his trust mortgage and he should not be denied the right by a decree of the court. Likewise as to bondholders, while none are appealing, each has the right to have the foreclosure consummated in accordance with the terms of the mortgage. To the bondholder who is not submitting his bond to be used in payment of a bid, it is of some importance to have the record made as provided in the trust mortgage itself as to whose bonds have been so used and to what extent payment has been made by bidding through the trustee at the foreclosure sale.

Further, to the bondholder who has not delivered his bond to the trustee to be used in making a bid at the foreclosure sale, the controverted provision of the trust mortgage fairly means that, by declining to permit his bond to be thus used, he saves himself from becoming a joint purchaser of the mortgaged property with other bondholders who have submitted their bonds to be used as the basis of a bid. Under our holding in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* 257 Mich. 655 (88 A. L. R. 1263), this is a substantial right and one in which such bondholder should be protected.

The trust mortgage provision that *all* bondholders are liable "in money" for their *pro rata* share of costs and expenses of foreclosure is but a natural and proper provision applicable to a sale to the trustee in event his bid in whole or in part is to be satisfied by indorsements on bonds or coupons. In that case cash will be required to cover court costs and other expenses of foreclosure. Hence the mortgage fittingly provides that "all the bondholders shall contribute and pay the trustee their respective and proportionate share" of the total of such items, and that each bondholder shall be liable to the trustee for his proportion of moneys paid out by the trustee, and that the trustee shall have a lien therefor upon the interest of the respective bondholders following foreclosure. There is no intimation in this provision of the mortgage that the trustee, in violation of the first above quoted mortgage provision, may bid at the foreclosure sale without producing any and all bonds or coupons which he proposes to use in satisfaction of his bid.

We can arrive at no other conclusion than that the quoted provision of the decree entered in the circuit court arbitrarily deletes from the trust mortgage a

portion of its contractual provisions in violation of the rights of the respective parties; and by so doing enables the trustee to make a bid on foreclosure which by necessary implication, at least, is forbidden by the terms of the mortgage itself. The decree entered in the circuit court should be modified in accordance with the prevailing opinion of this court at the original hearing.

NORTH and BUTZEL, JJ., concurred with BUSHNELL, J.

POTTER, J. I concur, as before, with the result reached by Mr. Justice BUSHNELL, but think the *dicta* in *Detroit Trust Co. v. Stormfeltz-Loveley Co.,* 257 Mich. 655 (88 A. L. R. 1263), does not state a correct rule of law. The point decided, the invalidity of the statute there under consideration as applied by the trial court, was correct.

Notwithstanding the language in *Kollen v. Sooy,* 172 Mich. 214; *Union Trust Co. v. Detroit Trust Co.,* 243 Mich. 451; *Janower v. F. M. Sibley Lumber Co.,* 245 Mich. 571; and *Wurzer v. Geraldine,* 268 Mich. 286, was applicable in each case to what was being attempted to be done therein, the rule is that courts of equity have inherent original jurisdiction of suits to foreclose mortgages, and authority to render such decree as substantial justice may require. 3 Jones on Mortgages (8th Ed.), § 1840; 1 Wiltsie on Mortgage Foreclosure (4th Ed.), § 35; 42 C. J. p. 19; *Michigan Ins. Co. of Detroit v. Brown,* 11 Mich. 265; *Johnson v. Shepard,* 35 Mich. 115; *McCrickett v. Wilson,* 50 Mich. 513; *Kelly v. Gaukler,* 164 Mich. 519; 3 Comp. Laws 1929, § 13944.

Trustees are governed by courts of equity (*Watkins v. Holman,* 16 Pet. [41 U. S.] 25) which may remove them for a violation of trust, appoint new

trustees, or cause the execution of the trust by their own officers. 3 Comp. Laws 1929, § 12993. Trustees in trust mortgages have both the legal and equitable title thereto vested in them, subject only to the execution of the trust. 3 Comp. Laws 1929, § 12982.

It is the trustee's duty to protect the beneficiaries of the trust, to sell the property in the most advantageous way if that becomes necessary, and, even though there is no express power in the trust mortgage authorizing the trustee to purchase the same at foreclosure sale, the trustee has the implied power so to do for the protection of the beneficiaries of the trust. 42 C. J. p. 206; 3 Pomeroy's Equity Jurisprudence (4th Ed.), § 1062; 3 Cook on Corporations (6th Ed.), § 885; Jones on Corporate Bonds & Mortgages (2d Ed.), §§ 289, 290; 3 Bogert on Trusts and Trustees, § 484; 1 Restatement of the Law of Trusts, § 231 (h); *Commonwealth* v. *Railroad Co.,* 122 Pa. 306 (15 Atl. 448, 1 L. R. A. 225); *Yerkes* v. *Richards,* 170 Pa. 346 (32 Atl. 1089); *Nay Aug Lumber Co.* v. *Scranton Trust Co.,* 240 Pa. 500 (87 Atl. 843, Ann. Cas. 1915A, 235); *Hoffman* v. *First Bond & Mortgage Co., Inc.,* 116 Conn. 320 (164 Atl. 656); *Silver* v. *Wickfield Farms, Inc.,* 209 Iowa, 856 (227 N. W. 97); *Straus* v. *Chicago Title & Trust Co.,* 273 Ill. App. 63. Such purchase must be in the interest of all the holders of bonds secured by such trust mortgage and substitutes the ownership of the property for the mortgage lien thereon. *Richter* v. *Jerome,* 123 U. S. 233 (8 Sup. Ct. 106).

With these reservations, I concur in the result reached by Mr. Justice BUSHNELL.