## DETROIT TRUST CO. *v.* RIVARD.

### APPEAL OF HONIGMAN.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CONTINUANCE OF
   TRUST MORTGAGE FORECLOSURE PROCEEDINGS.
   Whether or not continuance or postponement of trust mortgage
   foreclosure proceedings subject to subsequent orders or decrees
   of the court and in the light of a five-year lease made by the
   mortgagors was mutually advantageous to all parties con-
   cerned is not reviewed on bondholder's appeal where con-
   trolling issue is whether or not trial court had jurisdiction to
   make such order of postponement at a time when property
   was ample in value to meet the bonded obligation in full.

2. TRUSTS—CONSTRUCTION OF TRUST INSTRUMENT.
   A trust instrument must be construed as a whole where there
   are contradictory or ambiguous provisions therein.

3. MORTGAGES—TRUSTS—FORECLOSURE—CONTROL BY MAJORITY OF
   BONDHOLDERS—CONTINUANCE—COURTS—VALUE OF PROPERTY.
   Under trust instrument empowering a majority of bondholders'
   interest to control foreclosure proceedings except to waive
   payment of principal or interest for more than six months,
   where holder of some bonds objected to order continuing trust
   mortgage foreclosure proceedings, already pending more than
   three years, for five years at a time when property would
   satisfy the bonded obligation, such continuance was not au-
   thorized by the trust instrument nor within the power of the
   court to make, there being no applicable moratorium statute.

4. SAME—NATURE OF MORATORIUM RELIEF.
   Relief to mortgagors by moratorium is a legislative bestowal
   and not violative of constitutional provisions only because of
   universal need occasioned by general financial distress.

5. CONSTITUTIONAL LAW — MORATORIUM RELIEF — LEGISLATURE —
   COURTS.
   The power to declare a moratorium for relief of owners of prop-
   erty subject to lien of mortgages or other obligation belongs
   to the legislature, not the courts.

6. COURTS—APPLICATION OF LAW.
   Judicial tribunals must apply the law as it is found to be and
   can not make the law and apply it also.

7. EQUITY—JURISDICTION—MORTGAGES—FORECLOSURE—STATUTES.

Jurisdiction of equity in proceedings to foreclose a mortgage is not a matter of general equitable cognizance, but a statutory proceeding.

8. MORTGAGES — FORECLOSURE — STATUTES — SALES — ADJOURNMENT WITHOUT CAUSE.

A trial court has no power under statutes pertaining to foreclosure of mortgages to set aside, alter or impair mortgage contract, nor prevent sale as provided by statute by adjournment without cause (3 Comp. Laws 1929, §§ 14364–14380, as amended).

9. SAME—TRUST MORTGAGE BONDHOLDERS—SALES FOR CASH—TENANCY IN COMMON.

A bondholder under a trust mortgage has a right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with the right to look to the responsibility of the mortgagor for a proportionate share of the deficiency and he is not bound to become an owner in common of a beneficial interest in a trust which may run on for many years either by virtue of statute or court order.

10. SAME—FORECLOSURE—PROLONGED CONTINUANCE—IMPAIRMENT OF CONTRACT.

While a court of equity has the right so to control mortgage foreclosure proceedings as to produce a just result and to protect the rights of all parties, the adjournment or continuance of such proceedings for possibly five years constituted a material impairment of an objecting bondholder's contractual rights in the absence of an applicable statute providing a moratorium.

11. SAME—TRUST MORTGAGE FORECLOSURE—PROLONGED CONTINUANCE—NO-ACTION CLAUSE—BONDHOLDERS.

Bondholder, in objecting to five-year continuance of trust mortgage foreclosure proceeding, is not seeking to take action in individual right, contrary to no-action clause of trust instrument, but is asserting a right of action on the part of the trustee in behalf of all bondholders by demanding prompt prosecution of pending foreclosure case, *not an action in behalf of the trustee who is clearly an opposite party, nor an action in behalf of other bondholders who were satisfied with or at least acquiesced in the order of the trial court.**

* As to italicized portion of this syllabus, see, also, the opinion on denial of motion for rehearing, *post,* 75.—REPORTER.

ON MOTION FOR REHEARING.

12. COSTS—MOTION FOR REHEARING—CLARIFICATION OF OPINION.
     No costs are allowed on application for rehearing where only
       matter presented is a request for amplification or clarification
       of portion of original opinion.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted April 3, 1946. (Docket No. 18, Calendar No. 43,314.) Decided June 3, 1946. Rehearing denied September 11, 1946.

Foreclosure proceedings by Detroit Trust Company, a trustee, against Louise A. J. Rivard and others. On petition of plaintiff to have foreclosure suspended for five-year period. Jason L. Honigman objected thereto. From order adjourning foreclosure during tenancy of Fruehauf Trailer Company, Jason L. Honigman appeals. Reversed and remanded for further proceedings.

*Butzel, Eaman, Long, Gust & Kennedy (A. Hilliard Williams,* of counsel), for plaintiff.

*Sempliner, Dewey, Stanton & Honigman (Milton J. Miller* and *Norman Sommers,* of counsel), for defendant Honigman.

*Dykema, Jones & Wheat (Paul R. Trigg, Jr.,* of counsel), for trustee under will of Henry J. LaCroix, deceased.

NORTH, J. Appellant, Jason L. Honigman, is the holder of $19,000 face amount of bonds issued under a trust mortgage given in January, 1925, to the Security Trust Company as trustee. The Security Trust Company has been succeeded as trustee by the plaintiff, Detroit Trust Company. The mortgage covers property located at 2270 E. Jefferson avenue in Detroit. The building on the premises

was constructed for use as an automobile salesroom and garage. There was issued under the trust mortgage $175,000 of 6 per cent. bonds, dated December 1, 1924. The interest was payable semiannually. There was default in payment of interest, taxes and the payment of certain matured bonds. In 1933 the trustee filed a bill of foreclosure. While this suit was still pending and on August 30, 1937, the mortgagors and trustee entered into a supplemental trust agreement. This agreement provided that the maturity date of outstanding bonds should be extended to December 1, 1940, for the cancellation and waiver of interest in excess of $50,000 which had accrued or would accrue from December 1, 1931, to December 1, 1940. Incident to the consummation of the supplemental trust agreement the mortgagors paid back taxes levied against the mortgaged property somewhat in excess of $38,400. And further the mortgagors agreed that all rental income should thereafter be turned over to the mortgage trustee.

Thereafter default again occurred in that the mortgagors failed to pay the principal of the outstanding bonds by the extended date of maturity. They also defaulted in the payment of interest which accrued after December 1, 1940, in payment of taxes, and by reason of the breach of covenant to keep the mortgaged premises in repair. Because of such defaults the mortgage foreclosure proceedings now before the court were instituted. This second bill of foreclosure was filed February 11, 1942, and the proceedings were timely brought to issue and ready for trial.

Prosecution of the foreclosure proceedings was prevented or at least complicated by the fact that the United States of America on September 1, 1942, by condemnation proceedings took possession of the property for military purposes on a rental basis of

$1,300 per month. Had there been foreclosure, of necessity the sale would have been subject to the somewhat indefinite rights of the government, and the probability of obtaining a bid for the fair value of the property impaired. In consequence, on February 17, 1943, an order was entered continuing or adjourning the foreclosure proceedings during the period that the premises were used and occupied by the United States government. Such use and occupation terminated August 31, 1945. Thereupon the trustee, instead of proceeding to prosecute the foreclosure suit, filed a petition, October 10, 1945, wherein in substance it was sought to have the court enter an order modifying the former order of February 17, 1943, and adjourning or suspending the foreclosure proceedings for five years or at least during the tenancy of the Fruehauf Trailer Company, about to be noted, subject to any further order of the court.

Obviously the reason which in part prompted the trustee to file the above petition was that the fee owners had an opportunity to lease the premises for a period of five years to the Fruehauf Trailer Company at a monthly rental of $2,000 commencing November 1, 1945; with the further provision in effect that the lessee might terminate the lease at any time after the first two years upon payment of six months' additional rental of $12,000.

The order sought in the trustee's petition filed October 10, 1945, was approved by the bondholders' committee representing 75.22 per cent. of the outstanding bonds and by the Michigan public trust commission. Upon filing the petition the court issued an order to show cause why the prayer of the trustee's petition should not be granted; and directed that the order to show cause be served by mail upon all attorneys of record in the case and upon each of the bondholders whose addresses were

known. The matter was brought on for hearing October 26, 1945. .Aside from one objecting bondholder whose .objection seems to have been abandoned, there was no opposition to the granting of the prayer of the trustee's petition except that urged by appellant, Jason L. Honigman, who filed an objection. After hearing and considering the matter the trial court on October 30, 1945, filed an order amending the former order of February 17, 1933, in accordance with the prayer in the trustee's petition, but the court retained jurisdiction in the matter and reserved the right on application of any party in interest "to make such modification or change of this order or such further order, orders or decree as may be deemed necessary or appropriate to fully protect and preserve the rights and interests of all parties." It is from this supplemental order of October 30, 1945, that Jason L. Honigman, a holder of $19,000 face amount of outstanding bonds on which the unpaid principal is $15,200 and unpaid interest at 6 per cent. per annum accrued since December 1, 1940, has appealed.

The record discloses that at the time the order involved in this appeal was made the amount of the outstanding bonds had been reduced from approximately $108,000 as of February 17, 1943, to $92,000; but there was substantially $30,000 accrued interest unpaid. It is also a fair inference from the record that this property cannot be advantageously leased on a month-to-month basis. For a time following termination of possession of the property by the United States government the rental received on a month-to-month basis was only $600 per month. It is also obvious that a long-term lease cannot be effectively consummated except under an order of the court extending the time of foreclosure and redemption. The finally modified order entered by the court October 30, 1945, provided in substance that

the rental income of the property should be turned over to the trustee and two others associated with him in a joint bank account; and the funds so accumulating should be used first to meet specified items of expense incident to the execution of the trust and any accumulated amount after such payments should be used to pay interest accruing after November 1, 1945, and thereafter to be applied pro rata on the principal of outstanding bonds.

Appellant in support of his contention that the October 30, 1945, amended order was "unfair, inequitable, and contrary to the best interests of all bondholders" points out that the present market value of the mortgaged property is substantially in excess of the total amount of the unpaid bonds and accrued interest, including other prior liens against the property such as unpaid taxes, et cetera. The record sustains appellant's assertion in this respect. Since the property is of a value sufficient to satisfy in full the bonded indebtedness, and especially in view of the previous defaults of the mortgagors over a period of years, appellant insists that the trial court should not have ordered the long postponement of foreclosure, but instead should have denied the trustee's petition and ordered present prosecution of the foreclosure proceedings. And appellant makes the further contention:

"The trial court was without jurisdiction or authority to grant a five-year moratorium and in effect extend the maturity date of the trust mortgage bonds for an additional five years. We further submit that the trial court was without authority to lease the premises for a fixed term of five years, without provision for termination upon expiration of the equity of redemption." '

On the other hand the trustee in its brief points out that the five-year lease with the Fruehauf Trailer Company was made by the fee holders, not by the court; and that it is advantageous to all

parties concerned. Seemingly all of such parties, except appellant, are in accord with the contention that entering into the lease is of mutual advantage. Finally the trustee's contention is as follows:

"We submit that the order of October 30, 1945, does not violate or impair the contract rights of appellant or any other interested party in any respect. It is fair and equitable and fully preserves and protects the rights and interests of all. It conforms to the wishes of all parties in interest, except appellant. The trial court had jurisdiction and discretion to enter the order and there was no abuse of discretion."

Because we are of the opinion that decision does not rest upon determination of whether continuance or postponement of the foreclosure proceedings for a period of five years, subject to subsequent orders or decrees of the court and in the light of the Fruehauf Trailer lease, was mutually advantageous to all parties concerned, we do not review that phase of the record. Instead, we are convinced that the controlling question is whether under the terms of the trust instrument it can be said that postponement for a period of five years of the foreclosure proceedings at a time when the mortgaged property was ample in value to meet in full the bonded obligation was in violation or impairment of appellant's contractual rights; and in consequence thereof that the order of October 30, 1945, postponing foreclosure for a period of 5 years or until further order of the court was not one within the power of the court to make, and therefore not within the discretion of the court.

For determination of the controlling issue above noted we must look to the terms, conditions and provisions of the trust instrument, which in its presently material aspects was not altered by the supplemental trust agreement entered into by all parties in interest August 30, 1937. The original

trust mortgage or trust deed as printed in the record covers 37 pages. By reason of the multiplicity of detailed provisions it is not altogether free from some seemingly conflicting provisions. One in particular which is pertinent to decision of the instant case is hereinafter noted.

By suitable provisions therein contained the bonds were expressly made "subject to all the provisions of said trust mortgage or deed of trust, to the same extent as if said trust mortgage or deed of trust were fully herein set forth." Article 8 of the trust mortgage or deed of trust is devoted to "remedies of the trustee and bondholders." The trust instrument in much detail provides, in case of default, for direct sale (without foreclosure) of the property by the trustee and the disposition to be made by the trustee of moneys received from such sale. While the article also refers to "foreclosure of this indenture," paragraphs 4 to 8 (as well as other portions) of article 8 of the trust instrument relate primarily to the duties and powers of the trustee in taking possession and disposing of the property without foreclosure in case of default. Paragraph 7 of this portion of the trust instrument reads as follows:

"Anything in this indenture contained to the contrary notwithstanding, the holders of a majority in value of the bonds hereby secured and then outstanding from time to time, shall have the right to direct, subject to the limitations above described, the method and place of conducting any and all proceedings for the sale of the trust estate or for the foreclosure of this indenture, or for the appointment of a receiver or the taking of any other proper action hereunder."

Appellees, particularly the trustee, very strenuously stress the above-quoted provision as authority relied upon in justification of the trial court's order from which this appeal is taken. But it is elementary, especially if there are contradictory or ambigu-

ous provisions therein, that the trust instrument must be read and construed as a whole. Incident to doing this we find in this same article 8 in paragraph 15 subsequently very definite detailed provisions which we think are controlling. They read:

"15. The holders in majority of the value of the bonds issued and outstanding hereunder at any time shall have and are hereby given the absolute right to direct the action of the trustee in and about enforcing or waiving of any of the provisions of this indenture, *except the payment of the principal of such bonds at the time when they become due and the payment of any instalment of interest on said bonds for more than six months after such instalment of interest becomes due,* and the trustee at the request of a majority in value of the holders of such bonds shall waive any default which may occur in the performance of any of the covenants and conditions herein contained (evidently such as failure to pay taxes, keep premises insured or in repairs, et cetera), *except the covenants relative to the payment of principal and interest as herein last above referred to,* and the holders of a majority in value of said bonds shall further have the right to direct said trustee to discontinue any such proceedings which it may have taken to foreclose this mortgage or to enforce in any way the provisions thereof, or to direct the said trustee to restore to the mortgagors the trust estate, in the event that said trustee shall have taken possession thereof, or to waive any other act or thing done or omitted to be done by the mortgagors in violation of the terms hereof, or of any covenant on the part of the mortgagors under this indenture, *except the payment of the principal of the bonds secured hereby at the time and place provided therein, and the payment of any instalment of interest on said bonds for more than a period of six* months after such instalment of interest becomes due."

The above-quoted provisions, which we have italicized, are so definite, and by repetition have been so emphasized, that it seems quite impossible in giving a fair construction to the instrument to disregard them, as must be done if we accept appellees' contention. And if there is some conflict, as there seems to be, between the quoted provisions in paragraph 15, article 8, and the earlier quoted provision

of paragraph 7 of the same article, we are firmly of the opinion that the provisions in paragraph 15 must be held to be controlling. In that event the conclusion must be that the holders of a majority of outstanding bonds do not have the right to direct a trustee to waive the payment of principal or interest on these bonds for more than six months after the same became due and payable. The noted provisions in paragraph 15 mean that the purchaser of a bond had the right to make his investment firmly relying on the provision that in case of default by the mortgagors in the payment of principal or interest for a period exceeding six months his right to payment could not be impaired by the action of the holders of a majority of the outstanding bonds.

"In the absence of statutory authority or some provision in the instrument which establishes the trust, nothing can be done by a majority, however large, which will bind a minority without their consent." *Canada Southern R. Co.* v. *Gebhard,* 109 U. S. 527, 535 (3 Sup. Ct. 363, 368, 27 L. Ed. 1020).

To the same effect see *Michigan Trust Co.* v. *Howe, Snow & Bertles Realty Co.,* 267 Mich. 1.

Nor, under the circumstances of the instant case, did the trial court have the power to make a new and different contract over the objection of a party whose rights would be substantially impaired thereby. Appellant's bonds and accrued interest are long past due. The value of the mortgaged property is sufficient to assure payment in full on foreclosure of the bonded indebtedness. Appellant is lawfully entitled to payment. At the time the court made the order from which this appeal is taken, the foreclosure proceedings had already been pending for more than three years. The adjournment ordered by the court, at least tentatively or conditionally, extended the maturity date of outstanding bonds for an additional five years. It was

not within the trial court's power to postpone the maturity date and thereby deprive appellant of his right of payment for five years or until the court might see fit to modify its order of October 30, 1945.

There is not now in force in this State a moratorium statute applicable to the instant case. The late Justice WIEST, in a concurring opinion in *Miller* v. *Detroit Savings Bank,* 289 Mich. 494, said:

"Relief by moratorium is a legislative bestowal and not violative of constitutional provisions only because of universal need occasioned by general financial distress.  *  *  * The legislation confers an otherwise nonexisting measure of relief."

In 2 Jones on Bond and Bond Securities (4th Ed.), p. 294, it is stated:

"In the presence of an emergency the legislature may declare a reasonable moratorium.  This power, however, does not rest with the courts. ' Judicial tribunals must apply the law as it is found to be, and can not make the law and apply it also."

In *Bleakley* v. *Oakwayne Farms Co.,* 265 Mich. 268, we said:

"This Court has held that foreclosure of mortgage is not a matter of general equitable cognizance, but a statutory proceeding.* *Janower* v. *Sibley Lumber Co.,* 245 Mich. 571. *  *  *

"The statutes of this State regulating foreclosure of real-estate mortgages conferred no power or authority upon the trial court to set aside, alter or impair the mortgage contract  *  *  * [or] prevent the sale of the mortgaged premises as provided by statute by adjournment without cause.  If they did so they would violate both the Constitution of this State and the Constitution of the United States."

While our decision in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* 257 Mich. 655 (88 A. L. R. 1263), challenged the power of the legislature to

---

* See 3 Comp. Laws 1929, §§ 14364–14380, as amended (Comp. Laws Supp. 1940, §§ 14365–1—14367, Stat. Ann. and Stat. Ann. 1945 Cum. Supp. §§ 27.1132–27.1148).—REPORTER.

enact a law which impaired the contractual rights of a bondholder, nonetheless the holding is likewise applicable to courts under the circumstances of the case at bar. In the above case we said (pp. 663, 664):

"The act (of the legislature) does seriously impair the obligations of the contract of the nonassenting bondholders. * * * A bondholder has a right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with the right to look to the responsibility of the mortgagor for a proportionate share in the deficiency. He is not bound to become an owner in common of a beneficial interest in a trust which may run on for many years."

In accord with the foregoing it may be said in the instant case that appellant cannot by court order be bound to continue to be a bondholder for such indefinite period as the trial court may see fit to fix in lieu of having his contractual rights respected and, if necessary, enforced by due process of law. It is true that in foreclosure suits we have said: "A court of equity has the right to so control the proceedings as to produce a just result and to protect the rights of all parties;" * but we know of no instance where a court has approved an order or decree whereby the rights of a litigant or of a party having a beneficial interest in the subject matter of the suit were so materially impaired as by the court's order of October 30, 1945, in the instant case.

We are mindful that the trust instrument contains a "no-action clause" which in effect provides "no one or more of the holders of the bonds * * * shall have any right * * * to enforce any right hereunder;" but we are of the opinion that the provisions of the no-action clause are in no way applicable to the proceedings under review. *Appellant is not seeking to take action in his individual right, but instead is asserting a right of action on the part*

* See *Michigan Trust Co. v. Cody*, 264 Mich. 258.—Reporter.

*of the trustee in behalf of all bondholders.*† Since no reason appears in this record to the contrary, we are of the opinion that the orderly discharge of the trustee's duties under the circumstances above noted requires reasonably prompt prosecution of the pending foreclosure case. It follows that the order of the court of October 30, 1945, from which this appeal is taken should be vacated and that the case be remanded for further proceedings. A decree may be taken in this Court accordingly, with costs to appellant.

CARR, SHARPE, BOYLES, REID, and STARR, JJ., concurred. BUTZEL, C. J., did not sit. BUSHNELL, J., took no part in the decision of this case.

ON MOTION FOR REHEARING.

PER CURIAM. The only matter presented on this motion for rehearing is a request for amplification or clarification of the sentence in our opinion which reads: "Appellant is not seeking to take action in his individual right, but instead is asserting a right of action on the part of the trustee in behalf of all bondholders."

When read in connection with the context of the opinion, we think the above, as intended, clearly means: Appellant is not seeking to individually prosecute this suit in violation of the "no-action clause" in the trust instrument, as contended by appellee; but instead he seeks to have the foreclosure prosecuted by the trustee in behalf of all bondholders. The record and our opinion clearly discloses that the appellant's action taken in the trial court and on the appeal was not in behalf of the trustee. Instead, the trustee was clearly an opposite party. Nor was appellant's action in behalf of other bondholders, all of whom were satisfied with or at

--------
† See opinion on motion for rehearing below.—REPORTER,

least acquiesced in the order of the trial court from which the appeal was taken.

The motion for rehearing is denied, but without costs.

CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. BUTZEL, C. J., did not sit. STARR, J., took no part in the decision on this motion for rehearing.