## STRAUS v. METROPOLITAN INCORPORATED.

1. MORTGAGES — TRUST MORTGAGES — BONDHOLDERS — DEPOSITORS' AGREEMENT.

    Holders of trust mortgage bonds who have deposited over 94 per cent. of the outstanding bonds with a bondholders' protective committee under an agreement vesting the committee with full legal and equitable title to the bonds and specifically authorizing it to request the trustee to foreclose the mortgage, take possession of the property, sell it, and generally to procure the payment of the deposited bonds authorized the committee to petition the public trust commission and obtain its order to join with the trustee in petition for authority to bid in the mortgaged property at a foreclosure sale for the benefit of bondholders and such agreement bound the depositing bondholders (Act No. 89, Pub. Acts 1933, as amended; Act No. 210, Pub. Acts 1933).

2. SAME—PUBLIC TRUST COMMISSION—BONDHOLDERS' PROTECTIVE COMMITTEE—STATUTES.

    Order of public trust commission authorizing a bondholders' protective committee with which over 94 per cent. of outstanding bonds under trust mortgage of a leasehold interest were deposited to join with trustee in petition for authority to bid in mortgaged property at foreclosure sale was not contrary to statute creating public trust commission and regulating bondholders' protective committees (Act No. 89, Pub. Acts 1933, as amended; Act No. 210, Pub. Acts 1933).

3. SAME—TRUST MORTGAGES—BONDHOLDERS' PROTECTIVE COMMITTEE —REORGANIZATION—NONCONCURRING BONDHOLDERS—BID AT FORECLOSURE SALE.

    Action of bondholders' protective committee in procuring order from public trust commission authorizing the committee with which over 94 per cent. of the outstanding bonds, issued under

a trust mortgage, had been deposited to join with trustee in petitioning for authority to bid in the property at foreclosure sale at which no bids had been obtainable did not constitute a plan of reorganization requiring committee's compliance with provisions of depositors' agreement dealing with a plan of reorganization nor does such action violate substantial rights of either the mortgagor or nonconcurring bondholders in view of statutory requirements requiring payment of *pro rata* share of net amount to such nonconcurring bondholders (Act No. 89, Pub. Acts 1933, as amended; Act No. 210, Pub. Acts 1933).

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted October 20, 1942. (Calendar No. 42,172.). Decided February 23, 1943.

Petition by James I. D. Straus, as trustee under a trust mortgage, for authority to bid in mortgaged property for benefit of bondholders. From an order of the circuit court striking from the files a joinder of bondholders' protective committee in such request, plaintiffs appeal. Order vacated and cause remanded.

*George E. Brand,* for plaintiff trustee.

*Frank T. Hinks,* for appellant bondholders' protective committee.

*Butzel, Levin & Winston* (*Edward D. Quint,* of counsel), for Metropolitan Incorporated, defendant, and Gable Estates, Inc., intervenor.

BUSHNELL, J. This is an appeal by plaintiffs from an order entered in a leasehold bond issue mortgage foreclosure, striking from the files a "joinder" by the bondholders' protective committee in the request

by the bond indenture trustee for authority to bid in the mortgaged property at a foreclosure sale for the benefit of bondholders, under the provisions of Act No. 210, Pub. Acts 1933 (Comp. Laws Supp. 1940, §§ 14380–5—14380–9, Stat. Ann. §§ 27.1281—27.1285).

Appellant James I. D. Straus is the trustee, under a trust mortgage executed in 1928 by Central Detroit Realty Company, to secure an issue of $900,000 of its first mortgage leasehold bonds. Appellants Seldon, Wolff, and Moeller constitute a bondholders' protective committee for depositing bondholders under the terms of a deposit agreement dated April 20, 1931. This committee, prior to February 7, 1942, held on deposit $826,600 of the $877,500 par value of outstanding bonds.

A second mortgage was executed subsequently to the first mortgage. After a default in the payment of taxes and underlying rents this second mortgage was foreclosed and title to the leasehold passed thereby from the Central Detroit Realty Company to defendant Metropolitan Incorporated, subject to the first mortgage. On March 16, 1935, receivers were appointed to operate the property. The receivers are still in possession, but they have been unable to pay all of the rentals required by the underlying leases. On February 7, 1942, defendant Gable Estates, Inc., the holder of certain first mortgage bonds, withdrew $10,000 of them from the protective committee, and on February 13, 1942, as the holder of the withdrawn bonds and $2,000 of undeposited bonds, filed its refusal to concur in the trustee's request for authority to bid, and objected to the granting of such authority on the grounds that the act under which this authority was sought was unconstitutional and that the trustee was not authorized or empowered by the mortgage indenture

to bid in the mortgaged property in the manner or for the purpose provided in the act. Gable Estates, Inc., later acquired protective committee certificates covering additional deposited bonds totalling $4,000.

After a hearing and over the objections of Gable Estates, Inc., the Michigan public trust commission granted the protective committee's application for authority to join in the trustee's request for authority to bid.

A "joinder" was filed with the court as required by the 1933 act. Defendant's motion to strike this "joinder" was granted, the court holding:

"That the bondholders' committee did not have the authority, under the terms of the deposit agreement, to file a joinder of bondholders' protective committee for authority to bid. * * *

"That the Michigan public trust commission has only the power to supervise and regulate the various bondholders' committees, and would not have the authority to order the bondholders' committee to file a joinder in this action, unless such joinder was authorized by the deposit agreement. * * *

"That the proposed action of the bondholders' committee to file a joinder in request of the trustee for authority to bid in this property is giving the trustee the complete control over the property, subject to the supervision of the court alone, is materially affecting the rights of the bondholders, and that such an action is, in reality, a plan of reorganization; and that the bondholders' committee must comply with the deposit agreement with reference to any such plan of reorganization."

Appellants say the issues presented on appeal are as follows:

"Is the joinder or the acquisition of the property by the trustee a 'plan of reorganization' within the

provisions of the deposit agreement dealing with 'plans of reorganization'?

"Is such a joinder authorized by other provisions of the deposit agreement?

"Was the committee's construction of the deposit agreement that no plan of reorganization was involved, binding as expressly provided therein?

"If the joinder or purchase is a 'plan of reorganization,' did the notice of the public hearing before the public trust commission on the committee's application for leave to file the joinder constitute a sufficient compliance with the provisions of the deposit agreement as to notice of adoption and approval of a plan of reorganization?

"May the order of the public trust commission authorizing and directing the joinder be collaterally attacked?

"May the holder of bonds that were *withdrawn* from deposit with the committee nevertheless question the validity of the joinder as to the bonds remaining on deposit?  *   *   *  .

"May one who purchases a certificate of deposit of bonds *after* the holder has become a 'concurring holder' under Act No. 210, and *after* the public trust commission has authorized the committee to file the joinder, nevertheless question the validity of the joinder?''

Appellees say these issues are:

"May a bondholders' protective committee, in the absence of provision in the deposit agreement under which the committee functions authorizing such action, join with a trustee in a request of the trustee for authority to bid in mortgaged property under Act No. 210, Pub. Acts 1933, and apply the bonds towards acquisition of the mortgaged property by the trustee?

"Is the public trust commission authorized under Act No. 89, Pub. Acts 1933, to direct a bondholders' protective committee to take affirmative

action, where such action is not authorized by the deposit agreement under which the committee functions?

"Should the action of the bondholders' protective committee involved in this cause in joining in the request of the trustee for authority to bid in the mortgaged property under Act No. 210, Pub. Acts 1933, be construed to constitute a plan of reorganization within the provisions of the deposit agreement involved?

"Did the bondholders' protective committee comply with the provisions of the deposit agreement involved relating to approval and/or adoption of a plan of reorganization and submission thereof to the bondholders?

"May the owner of mortgaged property securing an issue of bonds and a holder of such bonds assert the invalidity of a joinder by a bondholders' committee in the request of the mortgage trustee for leave to bid in the mortgaged property under Act No. 210, Pub. Acts 1933, when such joinder is beyond the scope of the powers of such bondholders' committee conferred upon it by deposit agreement under which it is created?"

The single question whether the committee is authorized under the terms of the bondholders' agreement to execute such a "joinder" is decisive.

The "deposit agreement" by its terms vests in the committee "full legal, equitable, and beneficial title to all bonds deposited." It is given "every right, power, and authority, * * * in order to enable" it "to carry out and perform" the purpose and intent of the "deposit agreement."

The committee in its discretion is authorized to transfer the deposited bonds, to make changes in the forms of the mortgage, to take possession of the mortgaged property, to request the trustee to take such possession, and to sell the property, institute suits,

"and to give such directions, and do such acts, whether under or for the foreclosure of any such mortgage, or otherwise—as the committee shall deem judicious or proper, in order to protect the security provided by such mortgage, or to procure the payment of the deposited bonds of any issue, with interest thereon as therein provided; and to represent, bind, and act for the depositors, in any and all such matters, as fully and completely as the depositors themselves might do;

"(g) To consent and agree to the sale (without regard to whether such sale be, or not be, pursuant to judicial or legal proceedings) by any mortgagor, or by any trustee, or by any receivers of any such mortgagor or of the property of any such mortgagor, of any portion or portions of the property now under the mortgage executed by it, free and clear from the lien thereof, at such price or prices, and upon such terms and conditions, as may to the committee in its discretion seem best; and to consent, for any purpose whatsoever, to the release by the trustee under any such mortgage, of any and all of the property covered by said mortgage from the lien thereof, with or without compliance with the provisions, if any, contained in the said mortgage relative to the release by the trustee of property covered thereby, and for such consideration as the committee may fix.     *     *     *

"(o) To do, or cause to be done, whatever (including the execution and delivery of proper instruments) the committee, in its sole discretion, may deem expedient, necessary, or proper in order to preserve, protect, guard, secure, promote, or enforce the rights and interests of the depositors, and in such manner, and upon such terms, as the committee shall deem expedient; to make any settlement or adjustment with any holder of bonds not depositing the same under this agreement, for the purpose of securing his consent to any action, or forbearance or refusal to act, contemplated by the

committee or by the deposit of the bonds of such holder under this agreement; to do all acts and things provided for herein; and to exercise all powers granted herein in conjunction, and/or pursuant to any agreement, with any corporation now or previously associated with any issuer mortgagor in the operation of its business, and in conjunction with the holders of obligations or securities of any such corporation.''

The agreement provides that:

''The exercise, or contemplated exercise, of any of said powers or authorities shall not be deemed to constitute a plan of reorganization or readjustment which needs to be submitted to the depositors. The enumeration of specific powers given to the committee by this agreement, shall not be construed to limit or restrict the general powers conferred, or intended to be conferred, upon it. It is the intention of this agreement to confer upon the committee all powers, which it may deem necessary or expedient in or towards the furtherance of the general purposes of this agreement, although such powers be of a character not contemplated at the time of the execution hereof.''

The depositing bondholders have given the committee the power to do precisely what they seek to do and are bound by the terms of the instrument they executed. This distinguishes the instant case from *Union Guardian Trust Co.* v. *Building Securities Corp.,* 280 Mich. 144; on rehearing, 280 Mich. 717.

The committee may join the request of the trustee for authority to bid in the mortgaged property because it has been specifically authorized to do this by the depositing bondholders.

The order of the public trust commission is not in conflict with the provisions of Act No. 89, Pub.

Acts 1933, as amended (Comp. Laws Supp. 1940, § 290-1 *et seq.*, Stat. Ann. § 27.1291 *et seq.*).

The committee's action does not constitute a plan of reorganization and the committee is not required in this instance to comply with the provisions of the agreement dealing with a plan of reorganization.

Notwithstanding the withdrawal of certain deposited bonds, the committee controls a majority of outstanding bonds, and the court is required to make provision for payment to nonconcurring holders of their *pro rata* share of the net amount to which they shall be entitled. Act No. 210, Pub. Acts 1933.

No substantial rights of the mortgagor or of the nonconsenting bondholders have been violated.

The factual situation in the instant case is somewhat comparable to that in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.*, 257 Mich. 655 (88 A. L. R. 1263), in that no bids were obtainable at the mortgage foreclosure sale. In that case, which also involved a "joinder" by a bondholders' protective committee in the request of a trustee for authority to bid in the property at a foreclosure sale, the court said that such procedure did not violate any substantial rights of the mortgagor.

The order entered by the trial judge striking the "joinder" from the files is vacated and the cause is remanded for further proceedings not inconsistent with this opinion. It is so ordered, with costs to appellants.

BOYLES, C. J., and CHANDLER, NORTH, STARR, and SHARPE, JJ., concurred with BUSHNELL, J.

WIEST, J. (*concurring*). I concur. The applicable reasoning and law is stated in appellants' brief as follows:

"Act No. 210, Pub. Acts 1933 (Comp. Laws Supp. 1940, §§ 14380–5—14380–9, Stat. Ann. §§ 27.1281— 27.1285, provides the machinery for completion of a sale of the mortgaged property which is the security for payment of the mortgage debt. It is an expedient designed to obtain fulfilment (otherwise unobtainable) of the purposes of a trust by recourse to equitable court jurisdiction. The court deals with the impasse created by want of bids and the trust created by a trustee's purchase is to be administered under the court's supervision.

"The bonds as such are not required for completion of the purchase, if authorized. Purchase by the trustee under the act results in the automatic *pro rata* satisfaction of the amount owing on the bonds of all but the nonconcurring holders. This is on the theory that the trustee, in effect, applies as part payment of his bid, the debt found by the decree to be due to him insofar as it relates to the bonds of all but the nonconcurring holders. * * *

"Act No. 210 involves the issuance of no new or different securities; it makes no readjustment of the existing bonds or coupons; it does not modify, or discharge the mortgagor from, any personal obligation (except by the incidental credit resulting from this sale) and it leaves the mortgagor still liable for the deficiency and the mortgagor or others still possessed of all statutory rights of redemption. In no way is there any reorganization or readjustment of the mortgagor's affairs or property."

CHANDLER, STARR, and SHARPE, JJ., concurred with WIEST, J. BUTZEL, J., did not sit.