STRAUS v. CENTRAL DETROIT REALTY CO.

1. APPEAL AND ERROR—SETTLED CASE—UNDISPUTED STATEMENTS IN BRIEFS.

Where printed record on appeal, submitted as a settled case, does not contain a copy of the trust mortgage involved and facts involved are not in dispute, the Supreme Court may take facts relative to the mortgage from briefs filed by counsel for both parties where the truth of such statements is not denied by opposing counsel (Court Rule No. 66; No. 67, § 2; No. 68, § 2 [1933]).

2. STATUTES—TRUST MORTGAGES—EQUITY—CONSTITUTIONAL LAW.

Statute providing for invoking aid of equity court authorizing trustee to bid in property for bondholders, where no substantial bid has been received at foreclosure sale, violates no substantial right of mortgagor, since it insures substantial bid for property, thus decreasing deficiency (Act No. 210, Pub. Acts 1933).

3. SAME—TRUST MORTGAGES—NONASSENTING BONDHOLDERS—NOTICE —CONSTITUTIONAL LAW.

Statute providing that equity court may, in case substantial bid has not been received at foreclosure sale under trust mortgage, at request of holders of majority in amount of the bonds, authorize the trustee to bid in property for bondholders, did not constitute an impairment of the obligations of the nonassenting bondholders' contracts although trust mortgage itself did not empower trustee to make bid, where provision was made for giving them notice of hearing at which court conferred such authority and the manner in which it should be given (Act No. 210, Pub. Acts 1933).

4. MORTGAGES—TRUST MORTGAGES—FORECLOSURE—SUFFICIENCY OF NOTICE TO NONASSENTING BONDHOLDERS—AUTHORITY OF TRUSTEE TO BID.

Notice of hearing at which equity court authorized trustee under trust mortgage to bid in property where no substantial bid

therefor was otherwise obtainable and mortgage did not so em-
power trustee was sufficient where given by mail to all known
bondholders and also published as was required by statute
(Act No. 210, Pub. Acts 1933).

5. SAME—SERVICE OF NOTICE—PUBLICATION—PERSONAL SERVICE.
   With respect to nonassenting bondholders under a trust mortgage
   where it appears no substantial bid was forthcoming at fore-
   closure sale it is not a prerequisite to resort to publication
   of notice of hearing on question of authorizing the trustee to
   bid in the property that personal service of notice be had
   or attempted and showing made that in each instance such
   service was not possible, especially where there were over
   1,000 bondholders and trustee had no record of who they were
   or where they might be found (Act No. 210, Pub. Acts 1933).

6. SAME—TRUST MORTGAGES—FORECLOSURE—BONDHOLDERS.
   On foreclosure of a trust mortgage, a bondholder may insist
   on his contract and is not bound to become an owner in com-
   mon of a beneficial interest in a trust uncertain as to time and
   outcome and not contemplated by the trust instrument.

7. SAME—TRUST MORTGAGES—FORECLOSURE—BID BY TRUSTEE—NON-
   ASSENTING BONDHOLDERS—STATUTES.
   Under statute authorizing a court to empower a trustee under a
   trust mortgage to bid in mortgaged property upon which no
   substantial bid was forthcoming at foreclosure sale, such
   power is sought by holders of a majority in amount of such
   bonds, bid is made by trustee on behalf of all bondholders,
   and full pro rata share to nonassenting bondholders is re-
   quired to be paid them within 18 months from entry of order
   authorizing trustee to bid, obligations of bondholders' con-
   tracts were not impaired (Act No. 210, Pub. Acts 1933).

Appeal from Wayne; Neuenfelt (Lila M.), J.
Submitted October 12, 1943. (Docket No. 33, Cal-
endar No. 42,504.) Decided December 29, 1943.

Petition by James I. D. Straus, trustee, for au-
thority to bid and acquire mortgaged property.
Metropolitan, Incorporated, substituted as a party
defendant. Gable Estates, Inc., a New York Corpo-
ration, intervened as defendant. Orders entered au-
thorizing bid by trustee and accepting bid of trus-

tee. Defendants appeal. Affirmed and remanded for further proceedings.

*George E. Brand,* for plaintiff.

*Butzel, Levin & Winston (Edward D. Quint,* of counsel), for defendants Gable Estate, Inc., and Metropolitan, Incorporated.

BOYLES, C. J. This appeal is submitted to us as a settled case (Court Rule No. 66 [1933]). The facts are not in dispute. On November 30, 1928, defendant Central Detroit Realty Company executed to plaintiff-trustee a trust mortgage covering its long-term leasehold estates as lessee of land upon which is now located the Metropolitan building, Detroit, Michigan, to secure an issue of $900,000, 6 per cent., leasehold bonds. Subsequently the mortgagor's leasehold interests became vested in appellant Metropolitan, Incorporated. Central Detroit Realty Company defaulted in making payments and on June 30, 1931, plaintiff filed a bill in chancery to foreclose the trust mortgage. Foreclosure decree was entered February 28, 1934, and on March 16, 1935, receivers were appointed to operate the property; which receivership is still in effect. The receivers have been able to pay but a part of the rental stipulated in the underlying leases. As of February 7, 1942, $826,600 of the bonds were on deposit with the bondholders' protective committee under a deposit agreement. The committee has been and is duly licensed as such by the Michigan public trust commission.

Pursuant to the decree the circuit court commissioner published notice of foreclosure sale of the leasehold interests, which sale was postponed from time to time to July 30, 1941. The report of the

commissioner states that on July 30, 1941, he exposed the mortgaged property for sale at public auction in accordance with the decree and notice of sale, that no bids were received, and further states:

"I further certify and report that no bid for a sum representing the fair and reasonable value of the mortgaged property or of the interest of the holders of the bonds secured by said trust indenture appears to have been or to be obtainable."

On October 23, 1941, plaintiff-trustee filed in the foreclosure proceedings a request for authority to bid in and acquire the mortgaged property for the benefit of bondholders pursuant to Act No. 210, Pub. Acts 1933 (Comp. Laws Supp. 1940, § 14380–5 *et seq.*, Stat. Ann. § 27.1281 *et seq.*). On October 28, 1941, an order was entered requiring all interested persons to show cause before the court why plaintiff's request should not be granted and why the trust resulting from such acquisition should not be administered as contemplated by said Act No. 210. The order (as provided therein) was published in the Detroit Legal News on October 30, November 6, 13, 20, 27, December 4, 11, 18, 25, 1941, January 1, 8, 15, 22, 29, February 5 and 12, 1942. A copy of the order and of Act No. 210 were mailed to all known bondholders and to others as prescribed in section 2 of the act (Comp. Laws Supp. 1940, § 14380–6, Stat. Ann. § 27.1282). Proof of such mailing and proof of the publication were filed.

Appellants' counsel in their brief filed in this court ask plaintiff-appellee for a concession as to the residence of bondholders. Plaintiff-appellee's counsel in his brief filed herein makes the following concession of facts:

"There appears in the court files an affidavit of the trustee dated January 13, 1942, that at no time

has he had a list or any record of the bondholders nor any means of maintaining such a list; that the only list or record of such holders is that prepared and maintained by the bondholders' committee, of which Norman C. Cutshall is secretary, and, therefore, the trustee entrusted the mailing of copies of the order to show cause to said secretary and a clerk in the committee's office.  Proof of mailing was established by the filing of affidavits of said Cutshall and said clerk.

"A supplemental, unfiled, affidavit of Mr. Cutshall, showing the names of those to whom the mailing was made is available.  He confirms that the trustee has no list of bondholders and that the committee's list is made up from deposited bonds, inquiries and interviews.  From it it appears that (counting only one instead of each joint owner) there were, at the time of mailing, 1,048 persons who held bonds of the issue or certificates of deposit thereof.  These persons were listed as residing in 19 States and in Ontario and one each in Hawaii and Australia.  Of the 1,048 there were 479 listed as residing in 105 large and small communities in the upper and lower peninsulas of Michigan.  Of these latter, 68 were listed as holders of undeposited bonds and as living in 18 different communities."

On February 13, 1942, the court entered orders substituting Metropolitan, Incorporated, as a party defendant and permitting intervention of Gable Estates, Inc.

On February 13, 1942, appellant Gable Estates, Inc., as holder of $12,000 in par value of then-undeposited bonds of said issue, filed its refusal to concur in the trustee's request for authority to bid and objected to the granting of the trustee's petition therefor on the grounds (among others) that Act No. 210 is unconstitutional under the Federal and State Constitutions and that the acquisition of the property would be dehors the trustee's powers

under the mortgage. Gable Estates, Inc., on March 3, 1942, purchased a certificate of deposit covering an additional previously deposited $1,000 bond, and on March 11, 1942, purchased certificates covering an additional $3,000 of deposited bonds. However, none of these bonds is listed in its notice of non-concurrence nor in its petition to intervene. On March 27, 1942, the bondholders' committee filed its joinder in the request of the trustee to bid in the premises, reciting that the committee held $826,600 of bonds of the issue. This amount was later corrected to $816,600 as the amount held by the committee. The total amount of bonds outstanding is $877,500. The only other person who filed a nonconcurrence was the holder of a certificate of deposit of a $500 bond. That bond was included in the committee's joinder and such joinder, as to it, was upheld by the circuit judge.

Under date of June 18, 1943, appellant Metropolitan, Incorporated, by leave of court, likewise filed its objections to the granting of the petition of the plaintiff-appellee for leave to bid the property in under Act No. 210, Pub. Acts 1933, solely on the ground that said act is unconstitutional and violative of provisions of the Federal and State Constitutions.

The hearing on the order to show cause set for February 13, 1942, and on the objections, was continued from time to time. Extended proofs were taken, and on June 24, 1943, the court filed a written opinion overruling all of the objections and entered an order granting the plaintiff's petition to bid the property in under said act. From this order the defendants Gable Estates, Inc., and Metropolitan, Incorporated, appeal. On June 29, 1943, the trustee filed his bid for the property pursuant to the order of June 24, 1943, and his petition for its acceptance

duly noticed for hearing on June 29, 1943. On that date the court entered an order accepting said bid and referring the matter to a circuit court commissioner for Wayne county to complete the sale. Appellants herein also appeal from this order.

On June 30, 1943, the commissioner filed his report of sale setting forth that the mortgaged leaseholds were struck off to plaintiff, as trustee, for $104,000 and upon said date the said commissioner executed a commissioner's deed to plaintiff, subject to the provisions of the order entered in this proceeding on June 24, 1943. Order *nisi* confirming the report was entered on June 30, 1943, and notice thereof was given to all counsel of record, including counsel for appellants. No objections were filed to the report. No one other than appellants has objected to the orders appealed from herein.

The order authorizing the trustee to bid recognizes that Gable Estates, Inc., is a nonconcurring holder as to the $12,000 of bonds described in its notice of nonconcurrence and gives it a deferable option to elect to become a concurring holder if its appeal herein is unsuccessful. No question is raised by appellants as to this provision of the order.

The printed record filed in this court does not contain a copy of the mortgage involved. However, we take from the briefs filed by counsel for both parties the following statements as to the mortgage itself, the truth of these statements not having been denied by opposing counsel (Court Rules No. 67, § 2; No. 68, § 2 [1933]):

"The mortgage, after the customary recitals and granting provisions, and description of the mortgaged property, provides in part:

" 'And it is hereby expressly declared, covenanted and agreed that all of said bonds are to be issued, certified, delivered, received and negotiated,

and .that the said trust estate is conveyed to and to be held and disposed of by the trustee, subject to the following further terms, conditions, covenants, provisions, uses and trusts, that is to say:'

"Article 7 of the document, which provides for enforcement of the mortgage lien in the event of default of the mortgagor, provides in part:

" 'Sec. 5. If any one or more of the foregoing events of default shall occur, the trustee, with or without entry or other action and without any action on the part of any bondholder, and before, after or without declaring all bonds due, may and (upon written request of the holders of a majority in principal amount of the bonds then outstanding and upon being indemnified to his reasonable satisfaction) shall

" '(a) To the extent permitted by law, sell to the highest bidder, the said trust estate or so much thereof as the trustee may deem necessary or expedient, and all rights and equity of redemption thereof, at public auction or vendue upon such terms as to credit, partial credit, or security for payment, as the trustee may think proper or expedient, and upon such sale may execute and deliver to the purchaser a good and sufficient conveyance at law. * * * Such sale or sales shall be held in the city or village where the trust estate is situated. Notice of any such sale shall be given by publishing the same at least once in each week for six consecutive weeks in a newspaper printed and circulated in the county wherein said trust estate is situated. Such notice shall briefly specify the time and place of such sale, the name of first party and of the trustee, the date of this indenture, the date of recording same, the liber and page of record, the amount claimed to be due hereunder at the date of such notice and a description of the property to be sold. * * * or

" '(b) Proceed to foreclose this indenture as a mortgage and to cause the trust estate in whole or

in part to be sold by appropriate proceedings in any court of competent jurisdiction; or

"'(c) Proceed to foreclose this indenture as a mortgage by advertisement under the laws of the State of Michigan   *   *   *   or

"'(d) Resort to any or all other remedies at law or in equity or otherwise.   *   *   *

"'Sec. 9.   At any sale or foreclosure under this indenture the trustee or any bondholder may bid for and purchase property to be sold and, upon compliance with the terms of such sale, may hold, retain, possess and dispose thereof in his own absolute right without further accountability; and at any such sale said trustee or any bondholder or bondholders purchasing said property shall be entitled, for the purpose of making settlement or payment for the property purchased, to use and apply (to the extent hereinafter mentioned) any bonds and matured unpaid coupons secured hereby upon presenting such bonds and coupons in order that such purchaser may be credited by reason thereof with the sum apportionable and applicable thereto out of the net proceeds of such sale, provided, however, that such purchaser shall pay in cash a sum sufficient to pay all costs and expenses of the foreclosure proceedings and of such sale and of all receiver's certificates then outstanding, together with interest thereon.'

"Sec. 14.   Provides that in any suit or action by the trustee arising under the mortgage he shall not be required to produce the bonds or coupons involved, but shall be entitled to conduct the suit or action without such production—as if he were the holder.

"Sec. 15.   Prohibits actions by the bondholders to enforce the rights or remedies of the trustee; prohibits maintenance of action at law upon bonds or coupons by bondholders, except in certain events and, even then, provides for discontinuance upon

demand of the trustee if the pendency thereof impedes the trustee.

" 'Sec. 19.    *    *    *    No right, remedy or power herein conferred upon or reserved to third party or its successors, the trustee, or bondholders is intended to be exclusive of any other right, remedy or power; but each and every right, remedy and power shall be cumulative and in addition to any other right, remedy and power whether now or hereafter existing under this indenture or any other instrument, security, at law, in equity or otherwise; provided, however, that no right, remedy or power shall be invoked or exercised contrary to the provisions and intent of this indenture.

" 'Nothing contained in this indenture shall be construed as at any time requiring resort to any particular right, remedy, power    *    *    *    prior to resort to any other.'

"Article 8:

"Sec. 16. Provides that in all actions, suits, proceedings, dealings or transactions affecting or relating to the mortgage, the trust estate, the title or the security, the trustee shall be deemed to be the representative of the bondholders who, without notice, may be bound or concluded thereby. Also that the trustee may join in modifying, amending, altering or supplementing the mortgage in his absolute discretion, if deemed consistent with the best interests of the bondholders. Also that action taken by the trustee pursuant to such authority shall be conclusive and binding on the bondholders and no assent of such holders shall be requisite."

The appellants are (1) a nonconcurring bondholder, and (2) a Michigan corporation standing in the place of the mortgagor. The appellee (trustee) agrees with appellants that

"In view of the desirability of removing any question as to the trustee's title in the event a redemp-

tion is not made, and as bearing on the validity of the sale as to the necessity of redemption, a decision by the court on the questions raised by appellant is objective."

Appellants present three questions of law for decision. A determination of each of the questions necessarily involves a consideration of the other questions and for that reason they will be considered together.

Appellants claim that as applied to a trust mortgage executed in 1928 which does not authorize the trustee thereof to bid in the mortgaged premises for the benefit of the bondholders, a court proceeding under Act No. 210, Pub. Acts 1933 (Comp. Laws Supp. 1940, §§ 14380–5—14380–9, Stat. Ann. §§ 27.1281–27.1285), may not constitutionally authorize the trustee to bid in the mortgaged premises for the benefit of the bondholders. The lower court held that it could. Appellants also claim that Act No. 210, when applied to a trust mortgage executed in 1928 which does not contain any provision authorizing the trustee to bid in the mortgaged premises for the benefit of the bondholders, is unconstitutional, as violative of the provisions of the United States and State Constitutions against impairment of obligations of contract. Appellants further claim that Act No. 210, Pub. Acts 1933, is unconstitutional in that it undertakes to authorize the court to adjudicate in respect of vested rights and interests without service of process upon the interested parties and upon inadequate or no notice, contrary to the provisions of the Constitution of the United States and the Constitution of the State of Michigan prohibiting deprivation of property without due process of law. Plaintiff-appellee injects other elements into the questions involved

which he claims materially affect a proper consideration of Act No. 210, as follows:

"1. Where (after failure to obtain a bid at foreclosure sale under court decree) the mortgage trustee petitioned the court for authority to bid for and acquire the mortgaged leaseholds for the benefit of bondholders pursuant to Act No. 210, Pub. Acts 1933, should the court grant the trustee's petition and overrule the objections of the leasehold titleholder and of a bondholder that

"(a) Said act is unconstitutional because it deprives the objectors of their property without due process of law and unlawfully impairs the obligations of the mortgage and bond contracts, and

"(b) The mortgage gives the trustee no such right to acquire the mortgaged property?

"2. Do the provisions of said Act No. 210 for publishing, and for mailing to bondholders, notice of the hearing on such a petition, meet all constitutional requirements as to *notice* of such a proceeding?"

As these issues may be considered to affect Metropolitan, Incorporated, successor to the mortgagor, they have been settled by this court adversely to the claim of Metropolitan, Incorporated. This corporation, in effect, is the mortgagor in the instant proceeding. In *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.*, 257 Mich. 655, 662 (88 A. L. R. 1263), where this court had under consideration Act No. 111, Pub. Acts 1931, quite similar in effect to Act No. 210, Pub. Acts 1933, this court said, in considering a similar objection by a mortgagor:

"We cannot see how any substantial rights of the mortgagor are violated by the act. It only provides for invoking the aid of a court of equity after the property has been offered at public sale, duly advertised, and no substantial bid has been received. If a substantial bid is made, the act does not apply.

It is true that prospective bidders are more apt to refrain from bidding for cash when they know that the bondholders or the vast majority of them, acting through a committee, will outbid them, because they are able to apply bonds on the purchase price. Bidders other than bondholders have always suffered from this as well as other disadvantages. The act rather operates to the advantage of the mortgagor. It insures a substantial bid for the property, and thus decreases the deficiency. The mortgagor has notice of all proceedings, and is not deprived of any substantial rights."

Act No. 111, Pub. Acts 1931, was held unconstitutional by this court in the *Stormfeltz-Loveley Case, supra.* Does Act No. 210, Pub. Acts 1933, avoid the constitutional pitfalls which were the basis of that decision?

Act No. 111 did not provide for notice to bondholders of the hearing at which the court authorized the trustee under a trust mortgage to bid in the property for the bondholders where no substantial bid had been received at foreclosure sale. In the *Stormfeltz-Loveley Case, supra,* this court said (p. 662):

"The authority given by the court to the trustee to bid $760,000 for the property was granted at a hearing of which no notice was given to bondholders who had not deposited their bonds with the committee. Plaintiff claims that these holders were parties to the foreclosure brought by the trustees in their behalf, and thus had at least constructive notice of the proceedings in the suit. * * * The fact remains, however, that no notice was given, and it was essential that the nonassenting bondholders should have had notice either by personal service, or, if this could not be obtained, then by publication."

This objection has been eliminated in Act No. 210 which expressly provides for such notice to be given, and the manner in which it shall be given. In the case at bar, this notice was given in accordance with the statute. We are convinced from the record before us that the notice was sufficient. Appellants contend that personal service of process on each interested party must be had, and that publication could be resorted to only on a showing in each instance that personal service was not possible. We think the record shows that personal service was not possible in the instant case. Furthermore, such a requirement would render meaningless the provision that the trustee might bid in the property where the circumstances are such as shown in this record. Personal service on more than 1,000 bondholders, where the trustee had no record of who they were or where they might be found, was obviously impossible. The trustee was not bidding in the mortgaged property for himself or for anyone else except for the bondholders who had notice in accordance with the act. We hold that Act No. 210 satisfies constitutional requirements as against this objection.

In the *Stormfeltz-Loveley* decision, Act No. 111 was held unconstitutional for the further reason that it impaired the obligation of the contract with the bondholders. The court said (p. 664):

"A bondholder has a right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with the right to look to the responsibility of the mortgagor for a proportionate share in the deficiency. He is not bound to become an owner in common of a beneficial interest in a trust which may run on for many years and from which he may realize cash, stocks, bonds, or other securities that

eventually may net him more or less than the amount he would have received had the property been sold for cash.   *   *   *   We believe that the correct and reasonable rule in mortgage foreclosures is stated in *Werner, Harris & Buck* v. *Equitable Trust Co.* (C. C. A.), 35 Fed. (2d) 513; in the absence of any provision therein in the trust agreement—'authorizing the trustee to bid for and on behalf of the bondholders, there was no power in the courts to confer such authority upon the trustee.   *   *   *   Each bondholder has the absolute right to determine for himself, in case of default, whether he shall take his loss and quit, or continue to gamble; if the property is sold at public sale, he has a right to take his proportion of the best bid that can be secured in cash, and cannot be compelled to become an owner of an undivided interest in the property.'   *   *   *

"The bondholders are entitled to receive what their contract provided for, and cannot be compelled to take in lieu thereof a beneficial interest in a trust uncertain as to time and outcome, and not contemplated by the indenture." ·

This situation cannot arise under Act No. 210.  It expressly provides that the court shall make provision for payment to nonconcurring bondholders, in full and in cash, of their pro rata share of the net amount of the bid, within 18 months from the date of the order, with interest at the rate borne by their bonds.  Nonconcurring bondholders are not "compelled to take in lieu thereof a beneficial interest in a trust uncertain as to time and outcome, and not contemplated by the indenture" as in Act No. 111. In this case there is no question but that the trustee was merely authorized to bid in the mortgaged property for and on behalf of all the bondholders, and did so.  Act No. 210 plainly contemplates that the subsequent acts of the trustee as such, in the main-

tenance and operation of the property and ultimate disposal of the same, are for the benefit of all the bondholders. Section 4 of the act (Comp. Laws Supp. 1940, § 14380–8, Stat. Ann. § 27.1284) provides:

"It shall be the duty of the trustee to negotiate and effect a sale or other disposal of the property and make distribution of the proceeds of such sale or disposal to the beneficiaries of the trust at the earliest time at which the same can be done without sacrifice of the fair and reasonable value of such property."

Under the circumstances of this case no substantial rights of either the mortgagor or of appellant Gable Estates, Inc., a nonconcurring bondholder, have been violated. *Straus* v. *Metropolitan Incorporated,* 304 Mich. 254.

This is a foreclosure proceeding in chancery. Fundamentally, there is no persuasive reason why the trustee should not be allowed to bid in the mortgaged property for the benefit of all the bondholders, for whom he is merely a trustee. The legislature has so provided by Act No. 210. The bondholders, as mortgagees, act in concert in their own behalf through their duly appointed trustee. The trustee invokes the processes of the court on their behalf, to foreclose their mortgage. Act No. 210 fully safeguards the interests of the bondholders as to the circumstances under which the trustee can bid in the mortgaged property for their benefit. It (Comp. Laws Supp. 1940, § 14380–6, Stat. Ann. § 27.1282) provides:

"SEC. 2. Upon filing in any circuit court in chancery a report of the proceedings had in relation to the sale under a decree of said court for the foreclosure of any trust mortgage given to a trustee to

secure bonds issued and authenticated as therein set forth, if it shall appear from said report that no bid was made for the mortgaged property or if a bid therefor was made and it shall, in the manner hereinafter set forth, be made to appear to the court that the sum so bid does not represent the then fair and reasonable value of the interest of the holders of such bonds secured thereby, and, in either event, that no bid for a sum representing such fair and reasonable value of said interest appears to be obtainable, the court may authorize the trustee to bid for and acquire said mortgaged property as hereinafter set forth."

Act No. 210, Pub. Acts 1933, is not unconstitutional on the grounds asserted by appellants herein. The orders entered by the court below are affirmed, and the case remanded for further proceedings in accordance therewith.

CHANDLER, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred. BUTZEL, J., did not sit.